IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CALVIN SMITH, )<br>)<br>  Plaintiff, )<br>)<br> vs. )<br>)<br>CAVALRY PORTFOLIO SERVICES )<br>LLC; CAVALRY SPV I, LLC; and )<br>LAW OFFICE OF KEITH S. )<br>SHINDLER, LTD., )<br>)<br>  Defendants. ) | Case No. 20 C 1375 |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Calvin Smith has sued Cavalry Portfolio Services, LLC, Cavalry SPV I, LLC, and the Law Office of Keith S. Shindler, Ltd. on behalf of a class of similarly situated persons, alleging violations of the Fair Debt Collection Practices Act. The defendants have moved to compel arbitration of Smith's claims. For the reasons stated below, the Court denies the defendants' motion, albeit without prejudice.

### Facts

. In 2017, Smith opened a consumer credit account with Citibank, N.A. and, using that account, incurred debt for goods and services used for personal, family, or household purposes. The Citibank credit card agreement included an arbitration provision stating that Smith and Citibank "may arbitrate any claim, dispute, or controversy" between the parties "arising out of or related to your Account, a previous related Account, or our relationship." Compl., Ex. A, ECF p. 24 of 26. The arbitration

agreement also states that claims brought as part of a class action "can be arbitrated only on an individual basis." *Id.* The agreement between Smith and Citibank also provides that "Federal law and the law of South Dakota govern the terms and enforcement" of the agreement. *Id.*, ECF p. 25 of 26.

In 2018, Smith defaulted on his obligation to repay his credit card debt. One of the Cavalry defendants (the Court will refer to them collectively as Cavalry for the sake of simplicity) claims to have purchased Smith's account from Citibank and assigned it to the other Cavalry defendant to service and recover the debt. Cavalry retained the Shindler law firm to file suit to recover the debt. In August 2019, Shindler filed a lawsuit against Smith in the Circuit Court of Cook County First Municipal District to collect the alleged debt.

In September 2019, after filing the lawsuit, Shindler sent Smith a collection letter, including the identity of the new creditor, account number, and alleged balance due. The letter did not refer to Cavalry's lawsuit. It asserted that Smith owed a "total balance" of $1,216.05. That was the principal amount that Cavalry sought in the lawsuit, but in the suit it also sought court costs, and the collection letter made no reference to that. Smith alleges that the balance due claimed in the collection letter led him to believe that no lawsuit had yet been filed and that payment of $1,216.05 would satisfy his obligation when in fact that was not so. Smith says that in December 2019, he called the Shindler firm and spoke with someone there regarding the debt, who told him that he owed $1,216.05 plus court costs.

In the present lawsuit, Smith alleges that the defendants violated the FDCPA by making false or misleading representations and engaging in unfair practices in their

2

efforts to recover the debt. As indicated earlier, the defendants have moved to compel arbitration of Smith's claims.

## Discussion

The Federal Arbitration Act directs courts to consider arbitration agreements as they would any other contract. 9 U.S.C. § 2; *Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1424 (2017). Under the FAA, a court must compel arbitration when it finds that: (1) there is an enforceable written agreement to arbitrate; (2) the dispute falls within the scope of the arbitration agreement; and (3) a party refuses to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc*, 417 F.3d 682, 687 (7th Cir. 2005); 9 U.S.C. § 4. If a court finds that an enforceable agreement to arbitrate exists, it resolves disputes regarding the scope of the agreement in favor of arbitration. *E.g., Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983).

Smith makes a series of arguments directed toward the first two of the points that defendants are required to establish. Taking Smith's arguments in reverse order, the Court overrules all but one of them.

First, Smith's contention that his claims are not subject to arbitration because they are statutory claims and not claims based on the agreement lacks merit. The arbitration provision does not simply cover contract-law claims; it covers any claim "arising out of or related to [the debtor's] Account," expressly "including Claims based on . . . statutory or regulatory provisions." Compl., Ex. A, ECF p. 24 of 26. Smith's claim unquestionably relates to his account with Citibank, as it involves attempts to collect the account.

Second, Smith's argument that the arbitration agreement does not apply because

3

the claim is based on the state-court judgment, not the debt, likewise lacks merit. Smith's claim is premised upon on collection efforts that took place before judgment was entered in state court and that were, in any event, independent of any court-based collection procedures.

Third, Smith contends that under Illinois law, the contract "merged" in the judgment and thus no longer exists. Assuming that Illinois law applies despite the federal/South Dakota choice-of-law provision in the underlying agreement, the merger doctrine does not preclude the defendants from relying on the contract's arbitration provision. The reason is that the merger doctrine precludes only relitigation of claims on the contract. No authority cited by Smith supports the proposition that it precludes reliance on a contractual arbitration provision when a different party initiates a suit that is not directly based on the contract. *See, e.g., Kenny v. Kenny Indus., Inc.*, 2012 IL App (1st) 111782, ¶ 16, 976 N.E.2d 1040, 1045 (merger doctrine applies only to causes of action to bar relitigation of the same cause); *Stein v. Spainhour*, 196 Ill. App. 3d 65, 70, 553 N.E.2d 73, 76 (1990); *see also Poilevey v. Spivack*, 368 Ill. App. 3d 412, 414-15, 857 N.E.2d 834, 836 (2006) (merger doctrine applies to actions on the original claim, not ancillary matters).

Fourth, the defendants' representation in the state court case that the debt-collection claim was based on an unwritten agreement does not estop them from relying on the written agreement now. Suits to recover on a credit card debt are considered suits on an unwritten contract under Illinois law because the specific debt sued upon is not reflected in the credit card agreement but instead arises thereafter. *See, e.g., Ramirez v. Palisades Collection LLC*, No. 07 C 3840, 2008 WL 2515679, at *3 (N.D. Ill.

4

June 23, 2008). The defendants' representation to the state court was accurate and does not wipe out the existence of the pre-existing written agreement for purposes of the arbitration provision.

The defendants' motion to compel arbitration founders, however, based on Cavalry's failure to produce the documents needed to establish that they acquired the right to compel arbitration as part of the purported assignment of Smith's account. As indicated earlier, a threshold requirement on a motion to compel arbitration is the existence of a valid and enforceable arbitration agreement. The defendants, of course, are not parties to the original contract between Smith and Citibank. They contend that they may take advantage of the contract's arbitration provision because they were assigned the contract and thus all of the rights and obligations under the contract.

The defendants rely on a South Dakota statute stating that "the rights of an assignee are subject to . . . [a]ll terms of the agreement between the account debtor and assignor . . . ." S.D. Codified Laws § 57A-9-404(a)(1). Nothing in this statute, however, precludes modification of its terms by contract. And that is where the problem lies. Defendants included with their motion a copy of a bill of sale and assignment dated December 21, 2018. It states:

> For value received *and subject to the terms and conditions of the Master Purchase and Sale Agreement dated August 22, 2017 and Addendum No. 15 dated April 25, 2018, between Buyer and the Bank (the "Agreement")*, the Bank does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, the Accounts described in Exhibit 1 to the Addendum and the final electronic file.

Defs.' Mot. to Compel Arb., Ex. A at Ex. 1 (emphasis added). In short, the purported assignment is subject to the terms of another contract, which the defendants have not

5

provided.

In addition, what might be called the chain of title to Smith's account is uncertain. Attached to the just-referenced bill of sale and assignment is a redacted Exhibit 1 referencing a "lot" of accounts identified as the "Brands Fresh Flow" lot and stating that "[t]he individual Accounts transferred are described in the final electronic file and delivered by the Bank to the Buyer, the same deemed attached hereto by this reference." *Id.* The "final electronic file," however, is not included. Rather, the next document in defendants' submission is a single page identifying Smith's account, and only Smith's account. Defendants have also provided a separate document entitled "Affidavit of Sale of Account" signed by an employee of Citibank, N.A., stating that Citibank in fact sold "a pool of charged-off accounts" to Cavalry on December 21, 2018 pursuant to the previously referenced "Master Purchase and Sale Agreement dated August 22, 2017 and Addendum No. 15 dated April 25, 2018," and that he is not aware of any errors in the information provided about those accounts. *Id.* at Ex. 2. Nothing is attached to this affidavit other than a jurat; more specifically, there is nothing indicating the Smith's account was part of the pool.

Defendants have also provided an affidavit from a Cavalry employee describing the process of transmitting account records to Cavalry when it purchases accounts and identifying the previously-referenced documents as genuine. Defs.' Mot. to Compel Arb., Ex. A ¶¶ 5-9. This individual, however, does not verify that Smith's account was one of those actually transferred pursuant to the bill of sale and assignment.

The defendants' supporting materials do not sufficiently establish, in the face of Smith's challenge, the proposition that Cavalry succeeded to the arbitration agreement

6

between Citibank and Smith. First, as Smith argues, there is no competent evidence indicating that the bill of sale, the document describing the "Brands Fresh Flow" lot (whatever that might mean), and the one-page printout relating to Smith's account are part of the same transaction. It is conceivable that this is obscured by defendants' redactions, but there is no way the Court can tell. To put it another way, defendants' evidence regarding the actual assignment of Smith's account to Cavalry falls short.

Second, and in the Court's view more importantly, nothing in the South Dakota statute cited by defendants precludes modification by contract of the default rule that an assignee succeeds to the original agreement between the assignor and the debtor. In this case, the assignment document itself says that it is "subject to" another agreement—the Master Purchase and Sale Agreement and Addendum No. 15—that defendants have not provided and that, in fact, Cavalry refused to produce in response to a request by Smith. This leaves open the possibility that the master agreement or the addendum modify the assignment of accounts in a way that would affect Cavalry's right to rely upon the arbitration provision in the Smith-Citibank agreement. These points cannot be waved away, as the defendants suggest, by a contention that the defendants' right to enforce Smith's agreement with Citibank is established by the default judgment entered against Smith in state court, because nothing about that judgment established Cavalry's entitlement to compel arbitration.

## Conclusion

Because the defendants have failed to show that they can enforce Citibank's arbitration agreement with Smith, their motion to compel arbitration [21] is denied, without prejudice to renewal if the defendants provide the complete and properly-

authenticated documentation that establishes their ability to enforce the arbitration agreement. The stay of discovery is lifted. All discovery is to be completed by March 31, 2021. The case is set for a telephone status hearing on January 7, 2021 at 9:10 a.m., using call-in number 888-684-8852, access code 746-1053. Counsel should wait for the case to be called before announcing themselves.

Date: December 26, 2020

                                                    MATTHEW F. KENNELLY
                                                    United States District Judge